## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

_____

|  |  |
|---|---|
| **MUHAMMAD AMIR,** *ET AL.*, | * |
|  | * |
|  | * |
| *On Behalf of Themselves and* | * |
| *All Others Similarly Situated*, | * |
|  | * |
| PLAINTIFFS, | * |
|  | * |
| v. | * |
|  | * |
| **SUNNY'S EXECUTIVE SEDAN** | * |
| **SERVICE, INCORPORATED,** | * |
| *ET AL.*, | * |
|  | * |
| DEFENDANTS. | * |
|  | * |

**Case 13-cv-0161-CMH/TCB**

_____

## PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF AN FLSA COLLECTIVE ACTION AND TO FACILITATE IDENTIFICATION AND NOTIFICATION OF SIMILARLY-SITUATED EMPLOYEES

Plaintiffs, by and through undersigned counsel, hereby move this Honorable Court to grant conditional certification of the instant collective action claims under the Federal Fair Labor Standards Act ("FLSA") and to facilitate the identification and notification of similarly situated employees pursuant to the collective action provision of the FLSA[1].  In support thereof, Plaintiffs state as follows:

---

[1] "[C]ourts generally follow a two-stage approach when deciding whether the named plaintiffs in an FLSA action are 'similarly situated' to other potential plaintiffs...." *Parker v. Rowland Express, Inc.,*492 F. Supp. 2d 1159, 1164 (D.Minn.2007); *see also Choimbol v. Fairfield Resorts, Inc.,* 475 F. Supp. 2d 557, 562 (E.D.Va.2006).  The "notice stage" comes first; if the court makes the preliminary determination that notice should be given to potential class members, it "conditionally certifies" the class and potential class members can then "opt-in." *Parker,* 492 F. Supp. 2d at 1164 (*quoting Hipp v. Liberty Nat'l Life Ins Co.,* 252 F.3d 1208, 1218 (11th Cir.2001)).  After most of the discovery has taken place and the matter is ready for trial, the defendant can initiate the second stage of inquiry by moving to "decertify" the class.  At that point, the court makes a factual determination as to whether the class is truly "similarly situated." *Id.*

# I.     PROCEDURAL BACKGROUND

Plaintiffs have brought the above-captioned action on their own behalf and on behalf of other similarly-situated chauffeurs against Defendants, their current and former employers.  In this action, Plaintiffs, on behalf of themselves and the putative plaintiffs, seek the recovery of unpaid minimum wage and overtime compensation and damages under the FLSA.  At this time, Plaintiffs have filed a Complaint and Defendants have filed an Answer and have denied liability. Thereafter, Plaintiffs filed an Amended Complaint to which an Answer or other responsive pleading is not yet due.  The parties have engaged in no discovery at this time and no other motions are currently pending before the Court.

# II.     FACTUAL BACKGROUND[2]

1.      Plaintiffs and other similarly situated individuals were and are employed as a chauffeur driving sedans and/or sports utility vehicles for Defendants Sunny's Coach Services, Inc. and Shafqat Chaudry ("Defendants") from at least February 1, 2010 through the present ("at all times relevant" or "the relevant time period").

2.      From at least February 1, 2010 until about November 2011, Defendants misclassified Plaintiffs and all other chauffeurs as independent contractors and not as employees.

3.      Since about November 2011, Defendants have classified Plaintiffs other chauffeurs as employees.

4.      At all times relevant, Defendants failed and refused pay Plaintiffs and others chauffeurs minimum wage and overtime compensation at the rate required by Federal Law.

5.      In legal fact, at all times relevant, Plaintiffs and other chauffeurs were employees of Defendants and were never independent contractors.

---

[2] Several Plaintiffs have attached sworn Affidavits affirming each of the following facts.  Each relevant fact noted in this section is also alleged or referenced in Plaintiffs' Amended Complaint.

6.      At all times relevant, Plaintiffs and all other chauffeurs were required to use Defendants' equipment, wear Defendants' prescribed "uniform," and meet other employment rules and standards set exclusively by Defendants.

7.      At all times relevant, Plaintiffs and all other chauffeurs were told and understood that they would receive assignments conditioned on our compliance with Defendants' rules, including their willingness to work within schedules Defendants set, and on their willingness to keep the vehicles in geographic locations that Defendants required and which benefited Defendants during the drivers' mandated schedules.

8.      At all times relevant, Defendants generally scheduled Plaintiffs and other chauffeurs to work in twelve-hour (12) shifts, six days each week (approximately seventy-two (72) hours per week).

9.      At all times relevant, Defendants told Plaintiffs and other chauffeurs they were not permitted to use Defendants' vehicles to service passengers that the drivers might identify independent of Defendants' dispatching services.

10.     At all times relevant, Plaintiffs and other chauffeurs understood they would suffer (and on occasion did suffer) retaliation, by way of reduced dispatcher assignments, if they violated Defendants' rules.

11.     At all times relevant, Defendants controlled all aspects of Plaintiffs' job duties and the job duties of other chauffeurs through threats and strictly enforced employment rules.

12.     At all times relevant, Defendants hired Plaintiffs and other chauffeurs and, at all times, had the ability to discipline, fine, fire, and adjust Plaintiffs' schedule and the schedule of other chauffeurs.

13.     At all times relevant, Defendants supervised Plaintiffs' job duties and the job duties of all other chauffeurs to make sure Plaintiffs' job performance and the job performance of all other

chauffeurs was of sufficient quality and to ensure that Defendants' limousines were continuously disbursed throughout the Washington, D.C. metropolitan area and thus ready and available on short notice to retrieve and transport new fares.

14.   At all times relevant, the pay and opportunity for wages for Plaintiffs and other chauffeurs was limited to the pay method and work schedules set exclusively by Defendants.

15.   At all times relevant, Defendants controlled all aspects of setting and enforcing Plaintiffs' work schedule and the work schedule for other chauffeurs.

16.   At all times relevant, Plaintiffs and the other chauffeurs did not share in the profits of Defendants.

17.   At all times relevant, Plaintiffs and other chauffeurs did not make a financial investment in Defendants' company or any equipment belonging to Defendants.

18.   At all times relevant, to perform the work duties that Plaintiffs and other chauffeurs performed for Defendants, Plaintiffs and other chauffeurs did not have or need any required specialized certificate (other than a drivers license), specialized education, or specialized training.

19.   At all times relevant, Defendants were in the business of operating a sedan and limo service and at all times Plaintiffs' job duties and the job duties of other chauffeurs were directly related to providing limo and sedan driving services for Defendants' customers.

20.   At all times relevant, Plaintiffs and other chauffeurs performed work duties or were contractually engaged to be waiting to perform work duties for approximately seventy-two (72) hours per week, and for longer periods as job assignments extended beyond set schedules.

21.   At all times relevant, Plaintiffs and other chauffeurs were not compensated for other time spent on behalf of their employer, including but not limited to time spent traveling to dispatched assignments, time spent washing, servicing and maintaining cars, time spent during licensing

inspections, or time spent retrieving cars from delivery locations that included travel to Baltimore and to New Jersey.

22.    At all times relevant, Defendants instructed and demanded that while Plaintiffs and other chauffeurs were awaiting calls from Defendants' dispatcher, it was Plaintiffs' strict work responsibility and the strict work responsibility of other chauffeurs to remain at specific landmarks or locations and in specific geographic areas.

23.    At all times relevant, Plaintiffs and other chauffeurs were required, at all times during their shifts, to physically remain in or around Defendants' provided vehicle for the specific purpose of allowing Defendants to respond to last-minute reservations quickly, thereby ensuring that transportation jobs were not forfeited to other limousine operators or to taxicab drivers.

24.    At all times relevant, Defendants enforced that Plaintiffs and other chauffeurs remained at specific landmarks and in or around their vehicle in or around specific geographic areas through a closely monitored GPS system on their vehicle and/or on work phones for which Plaintiffs and other drivers were required to pay.

25.    At all times relevant, if Plaintiffs or other chauffeurs did not comply with Defendants' requirement that during their scheduled shifts they be readily available to shuttle customers in and around the Washington, D.C. metropolitan area, Plaintiffs and other chauffeurs would be punished through removal from Defendants' dispatcher's call list and thus receive no or substantially reduced income during a scheduled work period.

26.    At all times relevant, Defendants continuously and stringently instructed that Plaintiffs and other chauffeurs were on Defendants' time during all hours of their shift and they must remain available to perform work duties for Defendants' benefit.

27.    At all times relevant, Defendants had knowledge of all hours Plaintiffs and other drivers

worked because Defendants personally set Plaintiffs' work schedule and the work schedule of all other chauffeurs working for Defendants as well as monitored their GPS tracking and the tracking devices to ensure that Defendants had knowledge of all hours that Plaintiffs and each chauffeur worked each day and week.

28.     At all times relevant, Defendants purported to pay Plaintiffs and other drivers as "piece-rate" employees, initially in the amount of fifty percent (50%) of what Defendants allegedly charged customers per trip, not including tips, and after November 2011 in the amount of forty percent (40%) of what Defendants allegedly charged customers per trip—not including gratuity charges.

29.     At all times relevant, however, Plaintiffs and other chauffeurs did not receive all "piece-rate" wages as set forth above but rather received compensation in a substantially lower amount.

30.     At all times relevant, in a typical week, Plaintiffs and other chauffeurs earned piece-rate wages in the amount ranging approximately six hundred fifty dollars ($650.00).

31.     At all times relevant, Defendants required Plaintiffs and other chauffeurs to pay for Defendants' work costs including gasoline and tolls, amounting weekly to approximately three hundred dollars ($300.00), and Defendants did not reimburse Plaintiffs and other chauffeurs for gasoline; tools were reimbursed as income for which we were taxed.

32.     At all times relevant, Defendants also required Plaintiffs and other chauffeurs to pay for Defendants' dispatch communications system, charging Plaintiffs and other chauffeurs approximately $56.00 bi-weekly for radios and/or cell phones that Defendants used to communicate with Plaintiffs and other chauffeurs and to dispatch drivers to various chauffeur assignments.

33.     At all times relevant, the consequence of Defendants' failure and refusal to reimburse Plaintiffs and other chauffeurs for gasoline and other employer expenses was their received compensation was actually reduced to about three hundred fifty dollars ($350.00) per week ($650.00 per

week "piece-rate" – $300.00 for gas / $56.00 for radio = approximately $350.00).

34.     At all times relevant, because Defendants paid Plaintiffs and other chauffeurs wages without regard for the number of hours they worked each week, Defendants paid Plaintiffs and other chauffeurs straight pay, at their regular hourly rate, for all hours worked each week including overtime hours worked each week in excess of forty (40).

35.     In a substantial number of weeks during the relevant time period, Defendants paid Plaintiffs and other chauffeurs at an hourly that calculated to less than the Federal minimum wage ($7.25 per hour).

36.     At all times relevant, Defendants did not pay Plaintiffs or any other chauffeurs at the rate of the higher of one-and-one half times their regular rate of pay or one-and-one-half times the Federal minimum wage for overtime hours worked each week in excess of forty (40).

37.     At all times relevant, for all overtime hours Plaintiffs and other chauffeurs worked each week in excess of forty (40), Plaintiffs and other chauffeurs are owed the difference between their regular rate of pay and the required Federal overtime rate.

38.     The named Plaintiffs are actively and knowingly pursuing this action as an FLSA collective action on behalf of themselves and all other similarly situated individuals who performed work duties as sedan and SUV limousine drivers or chauffeurs for Defendants.

39.     Common to the claims of the named Plaintiffs and the other class members is that each individual received wages and overtime compensation from Defendants at a rate less than what is required by the FLSA.

40.     Plaintiffs have testified from first-hand knowledge the number of not-yet-joined class members is believed to exceed fifty (50) current and former chauffeurs.

41.     Plaintiffs have testified from first-hand knowledge that information related to the identity

of each class members is readily identifiable from information and records in the possession and control of Defendants.

For the reasons set forth below, each of these similarly-situated chauffeurs, employed by Defendants at any time in the relevant time period, are entitled to be notified about their legal rights under the FLSA as well as the existence of this lawsuit as a means of enforcing those rights.

### III.    LEGAL ARGUMENT

### A.    The FLSA Authorizes Similarly-Situated Employees to Litigate Collectively.

Under 29 U.S.C § 216(b) of the FLSA, "an action … may be maintained against any employer … in any Federal or State Court of competent jurisdiction by any one or more employees for and in behalf of themselves *and other employees similarly situated*." *Id.* (emphasis added).

For over seventy (70) years, Federal Courts have been examining the extent to which one or more named plaintiffs must be "similarly situated" to the proposed group of unnamed plaintiffs in order for all of the plaintiffs to proceed before the court together as a collective action.  In *Shain v. Armour & Co.*, 40 F. Supp. 488 (W.D.Ky.1941), which involved a claim for unpaid overtime wages, the court analyzed the "similarly situated" standard, and concluded as follows:

> The [FLSA] authorizes an employee to sue for himself 'and other employees similarly situated.'  It is very comprehensive and inclusive; it contains no restrictions other than that the other employees be similarly situated.  . . .  *Employees may be similarly situated without being identically situated.  The evident purpose of the Act is to provide one lawsuit in which the claims of different employees, different in amount but all arising out of the same character of employment, can be presented and adjudicated, regardless of the fact that they are separate and independent of each other.*

*Id*. at 490 (emphasis added).

In the years following the *Shain* decision, this same conclusion has repeatedly been reached by numerous other courts.  *See, e.g.*, *Bradford v. Bed Bath & Beyond*, 184 F. Supp. 2d 1342, 1345 (N.D. Ga. 2002); *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002); *Hyman v. First Union Corp.*, 982 F. Supp. 1, 7 (D.D.C. 1997); *Schwed v. G.E. Co.*, 159 F.R.D. 373, 375 (N.D.N.Y. 1995); *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 443 (N.D. Ill. 1982); *Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 616 (S.D. Tex. 1979).

In *Hoffmann-LaRoche v. Sperling,* 493 U.S. 165 (1989), the United States Supreme Court resolved a split among the circuits with respect to the role the courts should take in supervising the "opt-in" process and held that the district courts have discretion to implement § 216(b) by facilitating notice to potential plaintiffs. In *Hoffmann-La Roche*, the Supreme Court made the following additional important pronouncements: (1) once an action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way; *Id*. at 170-171; (2) it lies within the discretion of the trial court to begin its involvement early at the point of initial notice; *Id*. at 171; (3) by monitoring the preparation and distribution of the notice, the Court can insure that it is timely, accurate, and informative; *Id*. at 172; and (4) the district court has discretion, early in the litigation, to permit discovery of the names and addresses of employees to insure that such potential Plaintiffs are promptly and accurately notified; *Id*. at 170.

Significantly, "[t]he strict requirements of Rule 23 of the Federal Rules of Civil Procedure do not apply to FLSA 'collective actions,' and thus no showing of numerosity, typicality, commonality and representativeness need be made.  Rather, plaintiffs must meet only one threshold requirement:  they must demonstrate that potential class members are 'similarly

situated.'" *Levinson v. Primedia, Inc.*, No. 02Civ.2222, 2003 WL 22533428, at *1 (S.D.N.Y.

Nov. 6, 2003).  Moreover, the mere fact that the employees are categorized in a certain way by

their employer[3] or that the employees may work in multiple locales[4] is irrelevant to the issue of

whether or not they are similarly situated for purposes of a collective action under the FLSA.

> **B.     The Motion Should Be Granted Because the District Court is Authorized to Help Facilitate the Notification of Similarly-Situated Employees.**

It is well-settled that "[d]istrict courts have the discretionary power to authorize the

sending of notice to potential class members to inform them of the action and to give them the

opportunity to participate by opting in." *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d

234, 237-38 (N.D.N.Y. 2002) (citing *Hoffmann-LaRoche v. Sperling*, 493 U.S. 165, 169-70

(1989)); *Kane v. Gage Merch. Serv., Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001) (same).

Indeed, "it is 'unlikely that Congress, having created a procedure for representative action [under

the FLSA], would have wanted to prevent the class representatives from notifying other

members of the class that they had a champion.'" *Cook v. United States*, 109 F.R.D. 81, 83

(E.D.N.Y. 1985) (citation omitted).

The rationale for this court-facilitated notification procedure was best explained by the

United States Supreme Court in *Hoffmann-LaRoche, supra*:

> A collective action allows [FLSA] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.  The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [wrongful] activity.  *These benefits, however, depend on employees receiving*

---

[3] *See, e.g.*, *De Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 663-64 (E.D. Pa. 2001) (court authorized notice to potential plaintiffs in unpaid overtime case despite fact that plaintiffs worked "at various production positions within [defendant's] two plants").

[4] In *Hyman v. First Union Corp.*, 982 F. Supp. 1 (D.D.C. 1997), the district court permitted an FLSA case to proceed as a collective action despite the fact that the proposed members of the class were from three different states—Virginia, Maryland, and the District of Columbia.  *See id.* at 4; *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 307-08 (S.D.N.Y. 1998) (court allowed plaintiffs to notify similarly situated employees in unpaid overtime case even though employees worked at 15 different restaurants).

> *accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate. Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties.*

*Id*. at 170 (emphasis added).

The United States District Court for the Eastern District of Virginia regularly grants conditional certification where, as present here, the facts demonstrate the existence of other similarly situated individuals who are entitled to notice of their FLSA rights to unpaid wages and notice of a means to asserting those rights by "opting in" to an ongoing FLSA collective action. *See e.g. Gregory v. Belfor USA Group, Inc.,* 2012 WL 3062696 (E.D. Va. 2012); *Houston v. URS Corp.* 591 F. Supp. 2d 827 (E.D. Va. 2008); *Enkhbayar Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557 (E.D. Va. 2006).

**C.   The Motion Should Be Granted Because Plaintiffs' Standard of Proof at this Stage is "Modest".**

In making the "similarly situated" determination, this Court employs a two-step procedure which involves an initial assessment as to whether notification of similarly situated employees is warranted under the circumstances, and a subsequent, more finalized determination regarding the management and resolution of the claims filed by those employees who, having been so notified, actually elected to seek redress before the Court. This procedure was summarized by the United States District Court for the Southern District of New York:

> Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff: "[T]he Court need not evaluate the merits of [a plaintiff's] claims in order to determine that a definable group of 'similarly situated' plaintiffs" exists. "[T]he court need only reach a *preliminary* determination that potential plaintiffs are 'similarly situated.'" Certainly the Plaintiff must still prove at trial that the positions at issue actually qualify as non-exempt under the FLSA. But that is not the inquiry to be answered in deciding this motion. The ultimate determination regarding the merits of the case, and whether the class is properly situated -- which requires a more "stringent" inquiry -- is made later in

the litigation process, after more thorough discovery.

Here, I determine only that notice may be sent to those people who, at this very preliminary stage in the litigation, might be potential plaintiffs.  I am not determining that those being notified "are, in fact, similarly situated" to the Plaintiff, and I make no determination regarding the legal rights and responsibilities of the parties.  Again, the Plaintiff's burden for proving that he is similarly situated to these potential plaintiffs is minimal for this preliminary determination -- a determination that can be modified or reversed after discovery is complete.  Should it become clear later that the parties who have opted-in are not similarly situated to the Plaintiff here, I will make any rulings that are necessary and appropriate to ensure that the case is properly formed.[5]

*Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91 at 96 (emphasis in original) (citations omitted); *see also Goldman v. Radio Shack Corp.*, No. 2:03-CV-0032, 2003 WL 21250571, at *8 (E.D. Pa. April 16, 2003) (the first stage of the two-step procedure "requires a lax showing of 'similarly situated'"); *Carter v. Indianapolis Power and Light Co.*, WL 23142183, at *3 (S.D. Ind.) 2003. ("Before notice is authorized, the court is not required to come to a 'final determination' that the similarly-situated requirement has been met.").

Thus, under the current circumstances of the instant case, where Plaintiffs merely seek the identification of and notification to prospective class members at an early stage in the litigation, Plaintiffs "need only 'mak[e] a *modest* factual showing sufficient to demonstrate that [they] and potential plaintiffs together were victims of a common policy or plan that violated the law.'"  *Roebuck*, 239 F. Supp. 2d at 238 (emphasis added) (quoting *Realite*, 7 F. Supp. 2d at 306); *see also Pritchard*, 210 F.R.D. at 596.  In other words, "plaintiff[] need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist."  *Schwed*, 159 F.R.D. at 375-76; *see also*

---

[5] The New York court then noted that "should discovery reveal that plaintiffs in fact are not similarly situated, or that only plaintiffs who worked in the same . . . [location] or who held the same job type are similarly situated, I may later decertify the class, or divide the class into subgroups, if appropriate."  *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 96 n.1 (S.D.N.Y. 2003) (quoting *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998)).

*Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 278 (D. Minn. 1992) ("plaintiffs [need only] come forward with evidence that establishes a colorable basis for their claim that the potential plaintiffs are similarly situated").

The reason for such a lenient burden is that "a strict standard of proof on the plaintiffs at this stage would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' . . . of the FLSA." *Tucker v. Labor Leasing, Inc*., 155 F.R.D. 687, 690 (M.D. Fla. 1994) (quoting *Garner v. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991)).  Accordingly, "[a]t this initial 'notice stage,' the court usually relies 'only on the pleadings and any affidavits that may have been submitted'" in ruling on motions like the one being presented by Plaintiffs herein.  *Kane*, 138 F. Supp. 2d at 214 (citations omitted); *see also Mooney v. Aramco Servs., Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995).

Finally, it is important to note that prompt notification of the potential class members is critical in that, unlike a Rule 23 class action, the statute of limitations is not tolled for those potential class members by the filing of the present Complaint.  *See* 29 C.F.R. § 790.21(b) (in collective actions under the FLSA, unnamed plaintiffs are not deemed to have commenced the action until such time as his/her written consent to become a party plaintiff is filed in the court).

    **D.**    **The Motion Should Be Granted Because Plaintiffs Have Met Their Burden of Demonstrating that Other Chauffeurs Are "Similarly Situated" With Respect to Their Entitlement to Unpaid Minimum Wage and Overtime Compensation.**

As set forth above, in the Amended Complaint, and in Plaintiffs' attached Affidavits, Plaintiffs and many other current and former chauffeurs employed by Defendants were not properly compensated by Defendants at the FLSA prescribed minimum wage or overtime rate for a significant number of hours worked each week.  Plaintiffs have alleged and affirmed that it was Defendants' common and company-wide practice to pay Plaintiffs and chauffeurs a "piece

rate" and then subject Plaintiffs and other chauffeurs to a series of fees and charges resulting on a common failure and refuse by Defendants to compensate Plaintiffs and other chauffeurs at the FLSA prescribed minimum and overtime rate for all hours worked each week.  Therefore, it axiomatic that Defendants' unlawful pay practices have violated the FLSA minimum wage and overtime rights of numerous other current and former chauffeurs employed by Defendants.

### IV.    CONCLUSION

It is abundantly clear that a named plaintiff in a lawsuit to recover unpaid minimum wage and overtime compensation under the FLSA is permitted, with court approval, to provide notice of the suit to those potential plaintiffs who worked in a class of similarly-situated employees. This case calls for such action.

WHEREFORE, Plaintiffs hereby respectfully request this Honorable Court:

A.    Enter an Order compelling Defendants to produce to Plaintiffs' counsel, within fifteen (15) days, a list of the full name, last known residential address, last known work address, last known phone number(s), and last known e-mail address of each and every individual who worked as a chauffeur for Defendants at any time since February 1, 2010;

B.    Approve the attached "Important Notice" form for future use in notifying the group of potential plaintiffs; and

C.    Grant all other and further relief that the nature of this cause may require.

Respectfully submitted,

___/s/ Gregg C. Greenberg_____
Gregg C. Greenberg, Bar No. 79610
The Zipin Law Firm, LLC
836 Bonifant Street
Silver Spring, Maryland 20910
Phone:  301-587-9373
Fax:  301-587-9397
Email:  ggreenberg@zipinlaw.com

William R. Cowden, *pro hac vice*
William Cowden LLC

2002 Massachusetts Ave., N.W., Ste 100
Washington, DC 20036
202-642-0209/202-232-7550
Fax:   202-232-7556
Email:  wcowden@cowdenllc.com

*Counsel for Plaintiffs*