**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

_____ )
MUHAMMAD AMIR, et al.,                     )
                                           )
          Plaintiffs                       )   Case 1:13-cv-00161-CMH/TCB
                                           )
     v.                                    )
                                           )
SUNNY'S EXECUTIVE SEDAN                     )
SERVICE, INC., et al.,                     )
                                           )
          Defendants.                      )
_____ )

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
CONDITIONAL CERTIFICATION OF AN FLSA COLLECTIVE ACTION
AND TO FACILITATE IDENTIFICATION AND NOTIFICATION
OF SIMILARLY-SITUATED INDIVIDUALS**

**JACKSON LEWIS, LLP**

Paul DeCamp
Matthew F. Nieman
Jacqueline C. Tully
Elizabeth C. Young
10701 Parkridge Boulevard, Suite 300
Reston, VA  20191
Telephone:    (703) 483-8300
Facsimile:    (703) 483-8301
DeCampP@jacksonlewis.com
NiemanM@jacksonlewis.com
TullyJ@jacksonlewis.com
YoungE@jacksonlewis.com

_Counsel for Sunny's Executive Sedan
Service, Inc. and Shafqat Chaudry_

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ...................................................................................................................1

PROCEDURAL BACKGROUND..........................................................................................2

FACTUAL BACKGROUND ..................................................................................................3

I.     Services Provided By Sunny's Worldwide Chauffeured Transportation ...........................3

II.    The Relationship Between Sunny's And Drivers ...............................................................3

       A.     Independent Contractor Relationships .....................................................................4

       B.     Employment Relationship.........................................................................................5

       C.     Affiliate Relationship................................................................................................5

III.   Drivers Performed Services Under One Or More Of These Arrangements ........................6

IV.   Drivers Drove Vehicles Covered By The Motor Carrier Act .............................................8

V.    Drivers' Earnings Vary From Week To Week Based On Numerous Factors ....................9

ARGUMENT ...........................................................................................................................10

I.     Plaintiffs Have Failed To Meet Their Burden of Establishing That They Are Similarly Situated To A Manageable Class Of Individuals...............................................11

       A.     Plaintiffs Are Not Similarly Situated To Each Other Or The Putative Class And Are Not Appropriate Class Representatives ....................................................12

             1.     Drivers Are Not Similarly Situated Because Their Work Was Subject To Unique Terms And Conditions.................................................13

             2.     Plaintiffs Have Not Provided Any Legitimate Evidence In Support Of Their Pay Claims ...................................................................................14

II.    Plaintiffs Proposed Class Is Not Manageable, Violates Due Process, And Will Not Promote Judicial Economy ................................................................................................16

       A.     The Highly Factual Analysis Of Liability As Well As Damages Required In This Case Renders It Not Suitable For Collective Treatment ...........................16

1.      Class Treatment Is Inappropriate Because Of The Disparate Factual Circumstances Relating To Each Individual Plaintiff..................17

2.      Whether Waiting Time Of Each Plaintiff Was Compensable Time Requires A Fact-Intensive Inquiry Not Suitable For Collective Treatment .................................................................................................19

B.    Sunny's Individual Defenses To Plaintiffs' Claims Preclude Class Treatment ............................................................................................22

C.    The Underlying Reason For Issuing Conditional Certification Is Not Present In This Action ............................................................................26

CONCLUSION.................................................................................................26

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Blaney v. Charlotte-Mecklenburg Hospital Authority*,
    2011 U.S. Dist LEXIS 105302, (W.D.N.C. Sept. 16, 2011) ......................... 11, 16, 20, 26

*Bouthner v. Cleveland Construction, Inc.*, 2012 U.S. Dist. LEXIS 28497
    (D. Md. Mar. 5, 2012) ..................................................................................................... 16

*Buscarino v. TQ Logistics, Inc.*, 2010 U.S. Dist. LEXIS 82145
    (D.S.C. Aug. 11, 2010) ................................................................................................. 23

*Collins v. Heritage Wine Cellars, Ltd.*, 589 F. 3d 895 (7th Cir. 2009)......................... 24

*Dauphin v. Chestnut Ridge Transportation Inc.* 544 F. Supp. 2d 266
    (S.D.N.Y. 2008) ............................................................................................................. 22

*Demauro v. The Limo, Inc.*, 2011 U.S. Dist. LEXIS 1229
    (M.D. Fla. Jan. 3, 2011) ............................................................................................... 18

*Diaz v. Electronics Boutique of America, Inc.* 2005 U.S. Dist. LEXIS 30382
    (W.D.N.Y Oct. 17, 2005)......................................................................................... 11, 12

*Dinkel v. Medstar Health, Inc.*, 880 F. Supp. 2d 49 (D.D.C. 2012) ............................. 11

*Espenscheid v. Directsat USA, LLC*, 705 F.3d 770 (7th Cir. 2013) ....................... 15, 22

*Fox v. Commonwealth Worldwide Chauffeured Transportaton
    of NY, LLC*, 865 F. Supp. 2d 257 (E.D.N.Y. 2012) ......................................... 23

*Hunter v. Sprint Corp.* 346 F. Supp. 2d 113 (D.D.C. 2004)......................................... 10

*Katz v. Enterprise Solutions, Inc.*, 2005 U.S. Dist. LEXIS 37077
    (E.D. Va. June 21, 2005)............................................................................................... 17

*MacGregor v. Farmers Insurance Exchange*,
    2011 U.S. Dist. LEXIS 80361 (D.S.C. July 22, 2011) ............................................ 25, 26

*Mike v. Safeco Insurance Co. of America*, 274 F. Supp. 2d 216
    (D. Conn. 2003) ........................................................................................................... 17

*Pabst v. Oklahoma Gas & Electric Co.*, 228 F.3d 1128 (10th Cir. 2000).................... 20

*Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364
    (D.S.C. 2012) ......................................................................................................... 11, 16

*Perez v. Mountaire Farms*, 650 F.3d 350 (4th Cir. 2011) ............................................................ 20

*Pfaahler v. Consultants for Architects, Inc.*,
    2000 U.S. Dist. LEXIS 1772 (N.D. Ill. Feb. 8, 2000) ................................................. 11, 17

*Purdham v. Fairfax County Public Schools*, 629 F. Supp. 2d 544
    (E.D. Va. 2009) ............................................................................................................ 11, 12

*Purdham v. Fairfax County School Board*, 637 F.3d 421
    (4th Cir. 2011) ..................................................................................................................... 17

*Roy v. County of Lexington*, 141 F.3d 533 (4th Cir. 1998) ........................................................ 19

*Saleen v. Waste Management, Inc.*, 2009 U.S. Dist. LEXIS 49891
    (D. Minn. June 14, 2009) ..................................................................................................... 26

*Scott v. Now Courier, Inc.*, 2012 U.S. Dist. LEXIS 43710
    (S.D. Ind. Mar. 29, 2012) ..................................................................................................... 18

*Skidmore v. Swift and Co.*, 323 U.S. 134 (1944) ....................................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................................................... 24

**Statutes**

29 U.S.C. §§ 201, *et seq*. ............................................................................................................. 2

SAFE-TEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244 § 306(c) .................. 23

29 C.F.R. § 531.35 ....................................................................................................................... 15

29 C.F.R. § 778.111 ..................................................................................................................... 15

29 CFR § 782.2 ............................................................................................................... 22, 23, 25

**Other Authorities**

U.S. Department of Labor Field Assistance Bulletin 2010-2 ...................................................... 23

## INTRODUCTION

Plaintiffs seek conditional certification for individuals who drove or drive sedans/SUVs for Sunny's.  However, of the twenty-five current plaintiffs, there is not a single person who is representative of Plaintiffs' proposed group.  In Plaintiffs' own words, their "commonality" "is that each individual received wages and overtime compensation from [Sunny's] at a rate less than what is required by" the Fair Labor Standards Act ("FLSA").  Doc. 8, Pls.' Mot. for Cert. at ¶ 39.  The sum and substance of Plaintiffs' commonality is that they each seek redress under the same statute.  This simply is not sufficient to warrant conditional certification.  Indeed, conditional certification of Plaintiffs' claims would be contrary to public policy, do a disservice to the parties, and burden the Court.

Plaintiffs' proposed class of individuals who drove sedans and SUVs includes:

- Sedan/SUV drivers who worked under two different Independent Contract Agreements driving vehicles owned by Sunny's;

- Sedan/SUV drivers who worked as employees driving vehicles owned by Sunny's;

- Sedan/SUV drivers who worked as affiliates driving vehicles owned by the affiliate;

- Sedan/SUV drivers who also drove high-capacity vehicles;

- Sedan/SUV drivers who had personal incentive to remain in certain geographic areas; and

- Sedan/SUV drivers with different work and home locations and different ways of using their non-driving time.

These distinctions among and between the individuals in Plaintiffs' proposed class are not differences in fact.  The legal issues triggered by these fact differences require this Court to engage in the multi-factor analysis necessary in determining whether individuals are correctly classified as independent contractors,   a week-by-week analysis of the types of vehicles driven

by each driver to determine whether the driver was subject to the motor carrier exemption of the FLSA, and the multi-factor analysis necessary in determining whether certain time spent by an employee constitutes compensable work time.

In this case, small differences matter. With respect to Plaintiffs' misclassification claims and their off-the-clock claims, the analytical factors necessary to determine whether an FLSA violation exists do not contain bright line rules. It matters whether a driver drove a vehicle owned by Sunny's or someone else. It matters whether a driver provided driving services to customers other than Sunny's customers. With respect to whether drivers were exempt from the FLSA because they were covered by the Motor Carrier Act, the difference between a driver who drove a vehicle that carried nine, instead of eight, passengers matters. It also matters whether the driver of the nine-passenger vehicle also drove a sedan or SUV between 12:01 a.m. on Monday and midnight on Sunday. These differences are the difference between the existence, or absence, of a violation of the FLSA.

There is not a single individual that can represent all sedan/SUV drivers who provided services to Sunny's and there is no class-wide evidence available to adjudicate Plaintiffs' claims. For these reasons, Sunny's respectfully requests this Court to deny Plaintiffs' Motion for Conditional Certification.

## PROCEDURAL BACKGROUND

On February 5, 2013, seventeen plaintiffs filed this action against Sunny's Executive Sedan Service, Inc. and Shafqat Chaudry ("Sunny's" or the "Company"). *See* Doc. 1, Pls.' Compl. On April 22, 2013, the seventeen original plaintiffs and eight additional plaintiffs filed an Amended Complaint. *See* Doc. 7, Pls.' Am. Compl. Plaintiffs assert claims under the FLSA, 29 U.S.C. §§ 201, *et seq*. in addition to a variety of claims pursuant to Virginia common law. Plaintiffs' FLSA claims allege that Sunny's misclassified drivers as independent contractors and

failed to pay minimum wage and overtime. *See* Doc. 7. The Amended Complaint also alleges Sunny's retaliated against the named plaintiffs in a variety of ways. *See* Doc. 7 at ¶¶ 121-132. Plaintiffs now move this Court to conditionally certify this action and facilitate identifying and notifying individuals who drove sedans or SUVs for Sunny's from February 1, 2010[1] to the present. *See* Doc. 8, Pls.' Mot. for Cond. Certif.

## FACTUAL BACKGROUND

### I.    Services Provided By Sunny's Worldwide Chauffeured Transportation

Sunny's provides chauffeured transportation in a variety of vehicles. Sunny's fleet includes more than 60 luxury sedans and SUVs. Ex. 1 at ¶ 4 (Decl. of M. Shaikh). In addition, Sunny's fleet includes one stretch limousine that seats up to 10 passengers, five 14-passenger vans, one 10-passenger van, one 14-passenger stretch Lincoln Navigator, two 25-passenger busses, four 30 passenger busses, and three 35-40-passenger busses. *See id.* at ¶ 5. These vehicles are owned by Sunny's. *Id.*

Sunny's currently employs approximately 50 drivers to serve its Washington, D.C. metropolitan area customers. *Id.* at ¶ 16. In addition, Sunny's maintains relationships with dozens of "affiliates" that provide chauffeured transportation to Sunny's D.C.-metro area customers when demand exceeds fleet and employee capacity. *Id.* at ¶ 23.

### II.    The Relationship Between Sunny's And Drivers

Until November 1, 2011, drivers performed services for Sunny's as independent contractors. *Id.* at ¶ 12. Prior to approximately June 1, 2010, drivers performed services for Sunny's pursuant to one Independent Contractor Agreement ("IC Agreement 1"). *Id.* at ¶ 8; Ex. 2. After approximately June 1, 2010, drivers performed services for Sunny's pursuant to a

---

[1]    Plaintiffs Complaint was filed on February 5, 2013. Even assuming that Plaintiffs were able to prove that the three-year statute of limitations is applicable in this case, the appropriate proposed class period is limited to February 5, 2010.

revised Independent Contractor Agreement ("IC Agreement 2").  *See* Ex. 1 at ¶ 9; Ex. 3.  As of

November 1, 2011, Sunny's offered employment to many of its independent contractor drivers.

*See* Ex. 4; Ex. 1 at ¶ 12.  Additionally, concomitant with providing services as an independent

contractor or employee, some drivers have provided and continue to provide services to Sunny's

as an "affiliate."  *See id*. at ¶ 31.  As described below, the relationship and obligations between

Sunny's and its drivers varied depending upon the time period and the manner in which the

driving duties were performed.

### A.      Independent Contractor Relationships

Until November 1, 2011, sedan and SUV drivers were classified as independent

contractors and paid on a piece-rate/commission basis.  *See* Ex. 2 at ¶ 5 (IC Agreement 1); Ex. 3

at ¶ 5 (IC Agreement 2).  However, IC Agreements 1 and 2 differ in several key respects.  IC

Agreement 1 provides that drivers shall be paid "50% of the amount charged to the

COMPANY'S customer, exclusive of administrative fees and taxes."  Ex. 1 at ¶ 5.  IC

Agreement 2 provides that drivers shall be paid "50% of the COMPANY's then-current driver's

rate sheet, exclusive of administrative fees, voucher fees, any other charges levied to the

customer, fuel surcharges, and taxes."  Ex. 3 at ¶ 5.  Drivers working pursuant to the IC

Agreements were responsible for their own taxes and withholdings as independent contractors.

*See* Ex. 2 at ¶ 3.4; and Ex. 3 at ¶ 3.4 .  Additionally, IC Agreement 2 specifies that the driver was

permitted to use the Company's vehicle to transport both the "COMPANY'S customers as well

as CONTRACTOR'S customers."  Ex. 3 at ¶ 1.1.  IC Agreement 2 also specifies that

"CONTRACTOR may also accept assignments other than those referred to him by the

COMPANY."  Ex. 3 at ¶ 3.2.  Pursuant to IC Agreement 2, Sunny's was prohibited from

soliciting clients or customers of the driver.  Ex.  3 at ¶ 7.3.  None of these provisions was

contained in the previous IC Agreement.  Under both IC Agreement 1 and IC Agreement 2,

drivers drove vehicles owned by Sunny's.   Ex. 1 at ¶ 10.   Both IC Agreement 1 and IC Agreement 2 permitted drivers to determine their own hours and determine whether to accept or reject assignments.  *See* Ex. 2 at ¶ 3.3; Ex. 3 at ¶ 3.3.

### B.      Employment Relationship

After November 1, 2011, drivers drove Sunny's sedans or SUVs for Sunny's did so as employees.   The letter offering employment to drivers specifically superseded all previous agreements.   Ex. 4 (Offer Letter).   Thus, the terms of IC Agreement 1 and IC Agreement 2 no longer governed the relationship between the Sunny's and the drivers.   As employees, drivers are paid on a piece-rate basis of 40% of the then-current driver rate sheet for the job (and 40% for any wait or stop charges), plus an additional 20% gratuity/service charge on the base rate.   Ex. 1 at ¶ 17.   Employees driving vehicles other than sedans/SUVs are paid on an hourly basis.  *Id*. at ¶ 18.   Employee drivers are issued a W-2 and Sunny's makes the appropriate deductions for taxes and withholdings.  *Id*. at ¶ 15.

As employees, drivers are discouraged from rejecting assignments during a scheduled shift, although this does occur.  *Id*. at ¶ 19.   As employees, drivers are not permitted to use the Company's vehicles for business purposes not related to Sunny's or for personal reasons, other than commuting and incidental use.  *Id*. at ¶ 20.   This is in contrast to the IC Agreements that permitted drivers to use their vehicles to provide chauffeur services to non-Sunny's customers and use the vehicle for personal reasons.  *See supra* Facts at Part II.A.

### C.      Affiliate Relationship

Sunny's maintains relationships with "affiliates" to provide chauffeured transportation services to customers when demand exceeds the capabilities of Sunny's fleet.   Ex. 1 at ¶ 23. Affiliates are individuals or companies that provide chauffeured transportation to Sunny's customers in the affiliate's vehicle, driven by the affiliate's driver.  *Id*. at ¶ 24.   Affiliates are paid

100% of the then-current driver rate plus 20% of the driver rate as a gratuity/service charge.  *Id.* at ¶ 25.  Affiliates are issued 1099 forms for each tax year and are responsible for paying their own taxes and other withholdings.  *Id.*

## III.   Drivers Performed Services Under One Or More Of These Arrangements

Plaintiffs and others who have performed work duties as sedan and SUV drivers for Sunny's have performed those duties pursuant to one, two, three, or all four of arrangements discussed above.  Plaintiff Amir's self-reported period of service began in 2007 and ended in October 2010. *See* Doc. at 7, Pls.' Am. Compl. at Ex. 1 (Opt-In Form of Pl. Amir).  Thus, Amir was never subject to the terms and conditions of employment in place after November 1, 2011. Additionally, Amir performed jobs as an affiliate of Sunny's in 2011.  Ex. 1 at ¶ 26; Ex. 5 (108062 Amir Driver Report).  Plaintiff Toseafa performed services between September 2008 and March 2011.  *See id.* (Opt-In Form of Pl. Toseafa).  Plaintiff Syed Ali-Naqvi performed services from March 2009 until October 11, 2011.  *See id.* (Opt-In Form of Pl. Ali-Naqvi).  Thus, neither Toseafa nor Ali-Naqvi were ever subject to the terms and conditions of employment in place after November 1, 2011.

The self-reported periods of service for plaintiffs Qazi Khawar, Inam-Ul Kushwaha, Ali Umer Buttar, Abdul Choudhary, and Ijaz Faiz all occurred before June 2010 and therefore they performed services for Sunny's solely under the terms of IC Agreement 1.  *See id.* (Opt-In Forms of Pls. Khawar, Kushwaha, Buttar, Choudhary, and Faiz).  Indeed, Khawar's self-reported service ended in 2009, Kushwaha's self-reported service ended in 2009, Buttar's self-reported service ended in 2009, Choudhary's self-reported service ended in 2005, and Faiz's self-reported service ended in 2008—all prior to Plaintiffs' proposed class period of February 1, 2010.  *Id.*

On the other hand, the self-reported periods of service for plaintiffs Daniel Berhane, Goiton Bisrat, Syed Bukhari, Muhammad Choudhry, Tariq Farooq, Babar Khan, Ahmadullah

Mojadidi, Hamid Saeed, Shehzad Yousaf, and Raheel Farooq indicate that these plaintiffs performed services for Sunny's pursuant to IC Agreement 1, IC Agreement 2, and as employees. *See Id.* (Opt-In Forms of Pls. Bisrat, Bukhari, Coudhry, T. Farooq, Khan, Mojadidi, Saeed, Yousaf, and R. Farooq).

Some drivers that Plaintiffs seek to represent provided services to Sunny's as an affiliate during the <u>same time period</u> as they provided services to Sunny's pursuant to an Independent Contractor Agreement and/or were employed by Sunny's.  For example, Sandhu Maghar Singh was an independent contractor pursuant to IC Agreement 2.  *See* Ex. 1 at ¶ 27.  Under this agreement, and later, as an employee Singh was assigned driver number 100139.  *See id.*  From December 30, 2010 until July 13, 2011, Singh did not perform any duties for Sunny's under driver number 100139.  *See id.* at ¶ 28.

However, beginning on May 3, 2011 until May 7, 2013, Singh performed jobs driving a sedan as an affiliate.  *See id.* at ¶ 30.  When providing services as an affiliate, Singh was paid at 100% of the then-current drivers' rate sheet plus the gratuity/service charge of 20% of that rate. *See id.* at ¶ 25.

As an affiliate, Singh either performed transport jobs himself or assigned them to other drivers.  *See id.* at ¶ 32.  For example, on November 7, 2012 Singh provided driving services as an affiliate from McLean, Virginia to Dulles Airport for pick up at 6:30 a.m., from Alexandria, Virginia to Dulles Airport for pick up at 6:30 a.m., and from Oakton, Virginia to Reagan Airport for pick up at 6:40 a.m.  The times and locations of these assignments demonstrate that Singh did not personally provide services for all three jobs.  *Id.*

Beginning again on July 13, 2011 through November 5, 2012, Singh provided driving services to Sunny's on an intermittent basis under driver number 100139.  *See id.* at ¶ 28; Ex. 6

(100139 Singh Driver Report).   When providing services under driver number 100139, Singh

drove vehicles owned by Sunny's and typically drove high-capacity vehicles. *See* Ex. 1 at ¶ 29;

Ex. 6.  When Singh drove high-capacity vehicles, he was paid at an hourly rate.   *See* Ex. 1 at

¶ 18.  Thus, Singh provided services to Sunny's as an affiliate, while simultaneously providing

services pursuant to IC Agreement 2, and later, as an employee.

## IV.     Drivers Drove Vehicles Covered By The Motor Carrier Act

In addition to sedans and SUVs, many drivers also drive or have driven high-capacity

vehicles.  Ex. 1 at ¶ 65.  These high-capacity vehicles carry in excess of 9 passengers.  *Id*. at ¶ 5.

When driving high-capacity vehicles, drivers are paid on an hourly rate, not a piece-rate basis.

*Id*. at ¶ 18.  This hourly rate is always in excess of the statutory minimum wage rate.  *Id*.  Some

drivers exclusively drive high-capacity vehicles.  *Id*. at ¶¶ 65, 66.  Plaintiff Raheel Farooq (driver

number 100187) drove only high-capacity vehicles from February 1, 2010—the start of the

proposed statutory period—until his last day of employment on April 5, 2012.  *Id*. at 68; Ex. 20

(100187 R. Farooq Driver Report).

In addition to drivers who exclusively drive high-capacity vehicles, many drivers drive

high-capacity vehicles on a regular and intermittent basis.  Ex. 1 at ¶¶ 65, 66.  Some drivers have

workweeks[2] in which they drive only high-capacity vehicles.  *Id*. at ¶ 69.  For example, plaintiff

Bisrat often drove high-capacity vehicles for Sunny's.   *Id*. at ¶ 70.   There were several

workweeks in which Bisrat drove only high-capacity vehicles.  *Id*. at ¶¶ 70-77; Ex. 21-29.

(Workweeks of September 13-19, 2010; September 20-26, 2010; October 11-17, 2010; October

18-24, 2010; October 25-31, 2010; November 29 – December 5, 2010; December 6-12, 2010;

April 25 – May 1, 2011; May 2-8, 2011; October 3-9, 2011).  In other workweeks, Bisrat drove

---

[2]     Sunny's workweek begins at 12:01 a.m. on Mondays and end at midnight on Sundays.
Ex. 1 at ¶ 33.

high-capacity vehicles except for one or two sedan trips.  *See* Ex. 1 at ¶¶ 75, 77; Ex. 26

(Workweeks of April 18-24, 2011; April 9-19, 2012).

## V.     Drivers' Earnings Vary From Week To Week Based On Numerous Factors

When drivers make trips in sedans or SUVs, they are paid on a piece-rate or commission

basis.  Ex. 1 at ¶ 34.  When employees drive high-capacity vehicles, they are paid by the hour.

*Id*.  Drivers are also paid a trip bonus if they complete a certain number of trips per pay period.

*Id*.  Driver's pay varies from week to week based on the driver's availability as well as clients'

demand for Sunny's services.  *Id*. at ¶ 36.  Drivers of sedans and SUVs are responsible for

paying for their own fuel.  *Id*. at ¶ 37.  Thus, earnings can be affected depending upon the fuel

efficiency of their vehicle and their driving. For example:

- In the pay period of March 16-31, 2013, *after* fuel deductions plaintiff Babar Khan earned approximately $690 per week while plaintiff Bisrat earned approximately $975 per week.  Ex. 1 at ¶¶ 39, 50; Ex. 9; Ex. 14.  In this same pay period, plaintiff Solomon Assefa earned approximately the same amount per week as plaintiff Bisrat ($975) but paid for fuel directly.  Ex. 1 at ¶¶ 50, 57; Ex. 14; Ex. 17.  In this same pay period, plaintiff Daniel Berhane earned approximately $1,160 per week but paid for fuel directly.  Ex. 1 at ¶¶ 45, 46; Ex. 12.

- In the pay period of October 16-31, 2012, plaintiff Berhane earned approximately $1,070 per week and paid for fuel directly.  Ex. 1 at ¶¶ 48, 49; Ex. 13.  In the same pay period plaintiff Bisrat earned approximately $720 in per week *after* fuel deductions.  Ex. 1 at ¶ 55; Ex. 16.  Plaintiff Assefa earned approximately $955 per week during this same period and paid for fuel directly.  Ex. 1 at ¶¶ 63, 64; Ex. 19.

- In the pay period of July 1-15, 2012, plaintiff Khan earned approximately $1,189.14 per week, but paid for fuel directly. Ex. 1 at ¶¶ 41, 42; Ex. 10.  In the same pay period, plaintiff Bisrat earned approximately $1,200 per week *after* fuel deductions. Ex. 1 at ¶ 53; Ex. 15.  Plaintiff Assefa earned approximately $822 per week and paid for fuel directly.  Ex. 1 at ¶¶ 60, 61; Ex. 18.

- Plaintiff Carlos Toseafa was paid $9,602.72 for a maximum of 12 weeks of work in 2011.  Ex. 1 at ¶ 43; Ex. 11.  Plaintiff Toseafa's weekly earnings in 2011 were approximately $800.14, not including any deductions or accounting for direct payment for fuel.  Ex. 1 at ¶ 43.

**ARGUMENT**

The Court should deny conditional certification because Plaintiffs fail to meet their burden of establishing that they are similarly situated to other drivers of sedans and SUVs working for Sunny's and fail to show that facts relating to the putative class members are such that the case can be properly managed as a collective action.

Plaintiffs claim that they were misclassified as independent contractors for 21 months of the purported class period and that Sunny's failed to pay them the statutory minimum wage and/or overtime rates for each hour that they worked.  *See* Doc. 7, Pls.' Am. Compl.  Plaintiffs further allege that they worked, or waited for work, an average of 72 hours per week, were paid on a piece-rate basis for certain tasks and were not compensated for certain other tasks— essentially an "off-the-clock" claim.  *Id.*

Plaintiffs base their Motion For Conditional Certification on the allegation that "[c]ommon to the claims of the named Plaintiffs . . . and the other driver class members is that each individual received wages and overtime compensation from [Sunny's] at a rate less than what is required by Federal Law."  *See* Doc. 8 at ¶ 39, Pls.' Mot. for Cert.  Merely alleging that an employer did not pay a number of employees pursuant to the FLSA is not sufficient to meet even the lenient "similarly situated" standard for plaintiffs at this conditional certification phase. "[C]lass members in a collective must share more than a common allegation that they were denied overtime or paid below the minimum wage.  The class members must put forth a common legal theory upon which each member is entitled to relief."  *Hunter v. Sprint Corp.* 346 F. Supp. 2d 113, 119 (D.D.C. 2004) (internal citations omitted).  In this case, Plaintiffs' claims do not share a common legal theory, instead, their claims are subject to a series of "if, then" scenarios. These claims are not suited to treatment on a class-wide basis.  Therefore, Sunny's respectfully requests the Court deny plaintiffs' motion for certification.

I.       **Plaintiffs Have Failed To Meet Their Burden of Establishing That They Are Similarly Situated To A Manageable Class Of Individuals**

In their quest for collective certification, Plaintiffs must demonstrate that they are similarly situated to their proposed class *and* the court must be satisfied that the proposed class is manageable.  "In order to be certified as a collective action, the members of the proposed class must be 'similarly situated,' meaning plaintiffs must raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least *a manageably similar factual setting* with respect to their job requirements and pay provisions."  *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, 2011 U.S. Dist LEXIS 105302, *7 (W.D.N.C. Sept. 16, 2011) (citations omitted) (emphasis added).  Although the Fourth Circuit has not identified a test for conditional certification in an FLSA action, this Court has noted that a court should exercise its discretion to conditionally certify a proposed class only "where multiple claims can be adjudicated efficiently because they share common underlying facts and do not require substantial individualized determinations for each class member."  *Purdham v. Fairfax Cnty. Pub. Sch.*, 629 F. Supp. 2d 544, 549 (E.D. Va. 2009).  Like this Court did in *Purdham*, other courts do not hesitate to deny certification even at this initial stage where a plaintiff presents a case that would plainly call for detailed individual inquiries rather than allowing for class-wide proof of common claims.  *See e.g.*, *Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364 (D.S.C. 2012); *Dinkel v. Medstar Health, Inc.*, 880 F. Supp. 2d 49 (D.D.C. 2012); *Blaney*, 2011 U.S. Dist LEXIS 105302 at *31; *Diaz v. Electronics Boutique of Am., Inc.* 2005 U.S. Dist. LEXIS 30382, *12-13 (W.D.N.Y Oct. 17, 2005); *Pfaahler v. Consultants for Architects, Inc.*, 2000 U.S. Dist. LEXIS 1772 (N.D. Ill. Feb. 8, 2000).

In this case, Plaintiffs' claims cannot be adjudicated efficiently because the underlying facts regarding each Plaintiff's claim are distinct.  Therefore, this Court should deny Plaintiffs' Motion For Conditional Certification.

### A.    Plaintiffs Are Not Similarly Situated To Each Other Or The Putative Class And Are Not Appropriate Class Representatives

Plaintiffs purport to bring their claims "on behalf of themselves and all other similarly situated individuals who performed work duties as sedan and SUV limousine drivers or chauffeurs for" Sunny's.  Doc. 8-1 at ¶ 38.  Plaintiffs state that their common claim is that Sunny's failed to pay each individual wages and overtime required pursuant to federal law.  *See* Doc. 8-1 at ¶ 39.  However, the individuals who performed work duties as sedan and SUV drivers are not, and were not, subject to a common policy or plan because they performed services for Sunny's pursuant to different independent contract agreements and/or terms and conditions of employment.

The Plaintiffs bear the burden to show the putative class is similarly situated.  *See Purdham*, 629 F. Supp. 2d 544 at 548.  Although Plaintiffs' burden is relatively light, "mere allegations will not suffice; some factual evidence is necessary."  *Id*.

Plaintiffs are similarly situated if they "were victims of a common policy or plan that violated the law."  *Purdham*, 629 F. Supp. 2d at 549.  Where the alleged violation requires individualized factual determinations, class members cannot be "similarly situated."  *See Diaz*, 2005 U.S. Dist. LEXIS 30382 at *13-15.  Plaintiffs have failed to provide evidence to support their allegations that Sunny's maintains company-wide policies resulting in FLSA violations and that the alleged violation does not require individualized determinations.

### 1.    Drivers Are Not Similarly Situated Because Their Work Was Subject To Unique Terms And Conditions

Plaintiffs claim that, at all times relevant, they and the purported class members were employees of Sunny's, and therefore subject to the requirements of the FLSA.  However, the facts relevant to this claim, and the legal analysis of those facts, vary from driver to driver based on the period of time each individual drove for Sunny's and the governing terms of the relationship (IC Agreement 1, IC Agreement 2, employment, or affiliate).

Plaintiffs' self-reported dates of service indicate that some plaintiffs were subject to only the first independent contract agreement. *See supra*, Facts at III. (Khawar, Kushwaha, Buttar, Choudhary, and Faiz subject to only IC Agreement 1).[3]  Other Plaintiffs were never subject to the terms and conditions of the employment relationship.  *See id*. (Amir, Toseafa, Ali-Naqvi). Other Plaintiffs performed services for Sunny's pursuant to each of the three arrangements.  *See id*. (Berhane, Bisrat, Bukhari, Choudhry, T. Farooq, Mojadidi, Saeed, Yousaf, R. Farooq).

The two independent contracts contain materially distinct terms and conditions.  And subsequently, the terms and conditions of any driver's employment with Sunny's specifically nullified any of the previous agreements. Additionally, some individuals in the proposed class provided services to Sunny's as an affiliate while simultaneously performing services under one of the other three work arrangements.  The class of drivers Plaintiffs seek to represent are not similarly situated regarding Plaintiffs' allegations that drivers were improperly classified as independent contractors.

---

[3]    At the very least, Plaintiffs who performed work for Sunny's prior to the proposed class period are not adequate representatives of the class and must be excluded.

### 2.    Plaintiffs Have Not Provided Any Legitimate Evidence In Support Of Their Pay Claims

Additionally, Plaintiffs are not similarly situated to each other or purported class members regarding Plaintiffs' allegations that Sunny's pay practices violated the FLSA. Plaintiffs have failed to provide even "some factual evidence" to support their allegations that Sunny's maintains company-wide policies resulting in FLSA violations.

Specifically, in support of their allegations, Plaintiffs submitted five affidavits that are identical, save for the name and dates of employment. *See* Docs. 8-3; 8-4; 8-5; 8-6; 8-7, Attachments to Pls.' Mot. for Certif. In Plaintiffs' boilerplate affidavits, they each assert that in a typical week, they earned piece-rate wages "in the amount ranging approximately six hundred fifty dollars ($650.00)." *See id*. (Khan Decl. at ¶ 29; Toseafa Decl at ¶ 29; Berhane Decl at ¶ 29; Bisrat Decl at ¶ 29; Assefa Decl at ¶ 29). They assert that during "[e]ach week" of their employment, they were required to pay for gas, tolls, and radio/dispatch devices that resulted in actual compensation of $300 or $350.[4] *Id*. at ¶¶ 30-32. Plaintiffs further allege that "[a]t all times," they worked at least seventy-two (72) hours per week. *Id*. at ¶ 20.

However, Sunny's pay records demonstrate that Plaintiffs' allegations regarding the amount of their weekly pay amounts are simply untrue. Evidence demonstrates that Plaintiffs' earnings varied from pay period to pay period, depending on each driver's availability and client demands for their services. *See* Ex. 1 at ¶ 36. During the pay period of March 16-31, 2013, Plaintiff Khan earned approximately $690 per week after paying for fuel, while Plaintiff Bisrat earned approximately $975 per week after paying for fuel. *See supra* Facts at V. Plaintiff

---

[4]    Each affidavit submitted by plaintiffs contain the same mistake in their alleged calculations. Plaintiffs allege that their compensation "was actually reduced to about three hundred fifty dollars ($300.00) per week ($650.00 per week "piece-rate" - $300.00 for gas / $56.00 for radio = approximately $350.00)

Assefa earned approximately $975 per week in the same pay period as well, however, that does not account for the cost of fuel.  *See id.*

During the pay period of July 1-15, 2012, Plaintiff Khan earned approximately $1200 per week, while Plaintiff Assefa earned approximately $822 per week—both Khan and Assefa paid for fuel directly.  In the same pay period, Plaintiff Bisrat earned approximately $1200 per week, but that amount accounts for fuel deductions.  *See id.*

Plaintiffs' allegations of "typical" weekly wages are unreliable, at best.  More importantly, Plaintiffs' affidavit "evidence" taken together with Sunny's business records demonstrates that there is no "typical" weekly wage for drivers. Further, there can be no "typical" hourly rate for drivers.  "Consider the complication created by the piece-rate system. When one is paid by the job rather than by the hour, the hourly wage varies from job to job and worker to worker."  *Espenscheid v. Directsat USA, LLC*, 705 F.3d 770, 774 (7th Cir. 2013) (affirming decertification of claims in which piece-rate workers made off-the-clock claims).

Drivers *were* paid on a piece-rate/commission basis for sedan/SUV trips and Plaintiffs *did* incur certain costs associated with their work at various times since February 1, 2010. However, neither allegation, if true, supports their allegations that Sunny's violated the FLSA on a company-wide basis.  It is permissible for employers to pay employees on a piece-rate or commission basis, and it is permissible for employers to require employees to pay for certain work-related expenses associated with their work, so long as the minimum wage requirements are met.  *See* 29 C.F.R. §§ 778.111 and 531.35 (there is only a violation of the FLSA if the cost of tools cuts into the statutorily required wages under the Act).

Assuming Plaintiffs' allegations regarding the "typical" number of hours worked per week are as unreliable as their allegations regarding "typical" weekly wages, it is impossible to

say that Plaintiffs and purported class members are "similarly situated" as to alleged minimum wage or overtime violations.

## II. Plaintiffs Proposed Class Is Not Manageable, Violates Due Process, And Will Not Promote Judicial Economy

The Court should deny Plaintiffs' motion for certification because the proposed class is not manageable. "[C]onsideraton of issues relating to the manageability of a proposed collective action is appropriate at the notice stage of a[n] FLSA action." *Bouthner v. Cleveland Constr., Inc.*, 2012 U.S. Dist. LEXIS 28497, *16 (D. Md. Mar. 5, 2012). Indeed, even when plaintiffs are able to allege a class of similarly situated plaintiffs, class certification is inappropriate when there is "evidence that in order to resolve the claims of each plaintiff, individualized determinations as to whether the FLSA requirements were violated will be necessary." *Blaney*, 2011 U.S. Dist. LEXIS 105302 at *31.

"When evidence presented at the notice stage clearly shows that notice is inappropriate, a court can collapse the two stages of the analysis and deny certification outright." *Pelczynski*, 284 F.R.D. at 368. Factors in determining decertification "are relevant in assessing the evidence in order to determine whether to deny certification outright." *Id.* at 368. Those factors include "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Id.* at 368 (internal citations omitted).

### A. The Highly Factual Analysis Of Liability As Well As Damages Required In This Case Renders It Not Suitable For Collective Treatment

When proof in a case is specific to each individual plaintiff and "the court would have to apply the regulations on an individual basis" and "engage in an ad hoc inquiry for each proposed plaintiff to determine whether his or her job responsibilities were similar to [plaintiff's],"

certification should be denied.  *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003).

Here, Plaintiffs allege misclassification as independent contractors and violation of the minimum wage and overtime requirements pursuant to alleged off-the-clock work.  Each of these claims requires multi-factor, fact-intensive analysis which renders Plaintiffs' claims unsuitable for class treatment.

### 1. Class Treatment Is Inappropriate Because Of The Disparate Factual Circumstances Relating To Each Individual Plaintiff

One of the key issues in this case is whether Plaintiffs were properly classified as independent contractors rather than employees for all or a portion of the time they performed work for Sunny's.  "In order to determine who is an independent contractor and who is an employee, the court would be required to make a fact-intensive, individual determination as to the nature of each potential claimant's relationship with [defendant]. . . .Where this is the case, certification of a collective action under the FLSA is inappropriate."  *Pfaahler*, 2000 U.S. Dist. LEXIS 1772 at *4.

The test for determining whether an individual is an employee or independent contractor for purposes of the FLSA is the 'economic realities' test."  *Purdham v. Fairfax Cnty. Sch. Bd.*, 637 F.3d 421, 433 (4th Cir. 2011).  The economic realities test factors include:  (1) the degree of control which the putative employer has over the manner in which the work is performed; (2) the opportunities for profit or loss dependent upon the managerial skill of the worker; (3) the putative employee's investment in equipment or materials; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) whether the service rendered is an integral part of the putative employer's business."  *Katz v. Enter. Solutions, Inc.*, 2005 U.S. Dist. LEXIS 37077, *14-15 (E.D. Va. June 21, 2005).  "The economic realities test is fact intensive

and requires individual analysis." *Demauro v. The Limo, Inc.*, 2011 U.S. Dist. LEXIS 1229, *11 (M.D. Fla. Jan. 3, 2011). The requirement to conduct an "individualized assessment eviscerates all notions of judicial economy that would otherwise be served by conditional class certification." *Demauro*, at *13.

In *Scott v. Now Courier, Inc.*, the court denied plaintiffs' motion to certify a collective action of purportedly "similarly situated independent contractors" providing courier and delivery services. *Scott v. Now Courier, Inc.*, 2012 U.S. Dist. LEXIS 43710, *2 (S.D. Ind. Mar. 29, 2012). The court held that "the individualized nature of [p]laintiffs' contractual arrangements and compensation entitlements . . . do not lend themselves to class-wide relief." *Id.* at *27.

In *Scott*, the daily tasks of drivers differed "depending on a variety of factors, such as client requirements, driver and route types, the location from which the driver [was] dispatched, and the schedules drivers select on a given day." *Id.* at *25-26. Additionally, the court noted that it would need to consider the extent to which control of the drivers' work was exercised by virtue of the clients' individual scheduling preferences and the demands for services by clients as opposed to the control of the alleged employer. The court noted that "[p]laintiffs' reliance on the alleged company-wide policy and practice requiring drivers to be courteous to the clients, to wear their uniforms and display identification badges, and make timely deliveries" are not necessarily "indicative of an employer-employee relationship as opposed to an independent contractor relationship." *Id.* at *31.

Here, the independent contractor agreements permitted drivers to offer his or her driving services to others, so long as the driver did not solicit Sunny's customers. *See supra* II.A. The agreements allowed drivers to accept or reject driving assignments and choose the hours he works. *See id.* Plaintiffs claim that Sunny's required them to wear a uniform and meet standards

set by Sunny's.  *See* Doc. 8-1 at ¶ 6.  Plaintiffs also claim that they were required to remain in

certain geographical areas.  *Id*. at ¶ 22.  Plaintiffs state that they were required to pay for fuel,

but, at the same time  allege that they never made an investment in equipment.  *Compare* Doc. 7

Pls.' Am. Compl. at ¶ 31 and ¶ 27.

To determine whether each driver was accurately classified, the Court will need to sift

through the conflicting evidence and analyze the "economic realities" of each driver's

relationship with Sunny's, the extent to which the driver provided driving services to non-

Sunny's clients, the extent to which Sunny's exerted control Sunny's over his schedule and

location, each driver's investment in his work, and the remaining factors discussed above.  This

individualized assessment eviscerates the judicial economy that is sought by certifying a

collective action.  For this reason, Plaintiffs' Motion For Conditional Certification should be

denied.

> **2.      Whether Waiting Time Of Each Plaintiff Was Compensable Time
> Requires A Fact-Intensive Inquiry Not Suitable For Collective
> Treatment**

Once the Court has determined whether, and during which periods, each driver was an

employee, and therefore covered by the minimum wage and/or overtime requirements of the

FLSA, the Court will be required to determine whether all or some of the time Plaintiffs claim

they worked is compensable time.

The FLSA does not define work, although the critical question is whether the time is

spent predominantly for the benefit of the employer or the benefit of the employee.  *See Roy v.*

*Cnty. of Lexington*, 141 F.3d 533 (4th Cir. 1998).  As the Supreme Court has noted, issues of

compensability are highly fact specific.  An inquiry into compensability "involves scrutiny and

construction of the agreements between the particular parties, appraisal of their practical

construction of the working agreement by conduct, consideration of the nature of the service and

19

its relation to the waiting time, and all the surrounding circumstances." *Skidmore v. Swift and Co.*, 323 U.S. 134, 137 (1944).

In determining whether certain time is compensable, courts typically consider: (1) the agreement between the parties; (2) the nature and extent of the restrictions placed on the employee; (3) the relationship between the services rendered and the waiting time; (4) all surrounding circumstances; and the degree to which the burden on the employee interferes with his or her personal pursuits. *See Pabst v. Oklahoma Gas & Electric Co.*, 228 F.3d 1128 (10th Cir. 2000). Determining whether time is compensable is highly fact intensive. *See Perez v. Mountaire Farms*, 650 F.3d 350, 370 fn. 10 (4th Cir. 2011).

Factual variations regarding whether time is compensable "are relevant to the certification question because, ultimately, the substantive question of whether each [p]laintiff or putative class member may recover under the FLSA is an individualized, fact-intensive inquiry." *Blaney*, 2011 U.S. Dist LEXIS 105302 at *32 (denying certification of nurse's claims of unpaid meal breaks because facts surrounding missed or interrupted meal breaks and therefore analysis of compensability varied).

Here, variations in work schedules, work locations, dispatch locations, waiting time, tasks performed during waiting time, vehicles driven, and weekly wages earned will require the court to engage in an individualized, fact-intensive inquiry to determine whether any driver may recover under the FLSA. Here, Plaintiffs claim that "[a]t all times relevant, Plaintiffs and other chauffeurs performed work duties or were contractually engaged to be waiting to perform work duties for approximately seventy-two (72) hours per week, and for longer periods as job assignments extended beyond set schedules." Pls.' Mot. for Certif. at ¶ 20. Plaintiffs also claim

that drivers were required to remain in specific geographic locations and near their vehicle at all times during their shifts. *See id.* at ¶ 23-24.

Whether the time a driver allegedly spent waiting in a specific geographic location constitutes compensable time requires a fact-specific analysis. For example, Plaintiff Amir's stated home address is in the District of Columbia, half a mile from the Washington Convention Center. Plaintiff Shahid's stated home address is in Fredericksburg, Virginia, 50.8 miles from the Washington Convention Center. If, as Plaintiffs allege, Sunny's required drivers to remain in certain geographical areas, and Sunny's required both Amir and Shahid to remain in the area of the Convention Center, the multi-factored analysis regarding whether waiting is compensable time will be vastly different. Whereas Amir can remain in the assigned geographical area while sitting on his couch, paying bills, or watching TV, for Shahid to remain in the area, he must drive more than one hour from his home. The analysis of these to factual situations with regard to the interference in drivers' personal pursuits will vary greatly. The same distinct analysis exists for drivers who live in Alexandria or Arlington when they are told to remain in the geographical area of Reagan National Airport versus when they are told to remain in the vicinity of Dulles Airport. The compensability of certain time is further complicated to the extent drivers remained in geographical areas *not* at Sunny's request but because they had a financial incentive to be responsive to client needs because they were paid on a piece-rate basis.

As noted above, not only must the Court determine the amount of compensable time for each driver, the Court will then need to analyze each driver's earnings for that week to determine whether, and to what extent, the driver may recover under the FLSA. For individuals who drove Sunny's vehicles under an independent contractor agreement or employee relationship during the same time period they drove their own vehicles pursuant to an affiliate relationship, the Court

would need to determine whether the hours worked as an affiliate were hours worked as an independent contractor or would be counted for purposes of calculating liability and/or damages. As the Seventh Circuit recently cautioned when affirming that claims brought by piece-rate workers could not proceed as a collective action in *Espenscheid v. Directsat USA, LLC*, "to determine damages [for piece-rate workers], would, it turns out, require [] separate evidentiary hearings" regarding each worker. 705 F.3d at 773. Here, a difference in either the hours worked by a driver or the earnings of a driver in any given workweek can be the difference between the existence and absence of a violation of the FLSA. Because of this, trying Plaintiffs' claims on a class-wide basis would require a separate mini-trial regarding each driver. Therefore, this case is not suitable for class treatment and conditional certification should be denied.

### B.  Sunny's Individual Defenses To Plaintiffs' Claims Preclude Class Treatment

Sunny's will defend against Plaintiffs' claims based on a variety of defenses specific to each individual Plaintiff. For example, Sunny's will assert, that Plaintiffs' claim for unpaid overtime is barred because some, if not all, of the work performed Plaintiffs and putative class members was exempt under the motor carrier exemption. "[T]he motor carrier exemption depends upon the activities of the individual employees" and evidence must be presented "as to the character of the activities of each plaintiff in order to determine whether he or she is subject to the exemption." *Dauphin v. Chestnut Ridge Transp. Inc.* 544 F. Supp. 2d 266, 274 (S.D.N.Y. 2008) (internal citations omitted).

Whether employees are exempt under the FLSA because they are subject to the Department of Transportation's ("DOT") jurisdiction under the Motor Carrier Act ("MCA") "depends both on the class to which his employer belongs and on the class of work involved in the employee's job." 29 CFR § 782.2(a). Employees who are "employed by carriers whose transportation of passengers or property by motor vehicle is subject" to the jurisdiction of the

DOT and "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce" are exempt from the overtime protections of the FLSA. *Id.*

Excluded from this exemption, in relevant part, are employees who work, in whole or in part, as a driver of motor vehicles: (1) weighing less than 10,000 pounds; (2) transport less than 9 passengers (including the driver) for compensation; or (3) transport less than 16 passengers (including the driver) not for compensation. *See* SAFE-TEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244 § 306(c). Thus, where drivers drive vehicles that carry nine passengers or more, "the DOT is authorized under the MCA to set maximum work hours for the employee, thus the FLSA's overtime provisions do not apply to that employee." *See Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, 865 F. Supp. 2d 257, 264 (E.D.N.Y. 2012). The DOT will assert its jurisdiction over an employee for a four-month period beginning on the last date the employee was called on or could have been called on to perform MCA-covered duties. *Buscarino v. TQ Logistics, Inc.*, 2010 U.S. Dist. LEXIS 82145, *17-18 (D.S.C. Aug. 11, 2010) (adopting DOT's 4-month rule in absence of Fourth Circuit guidance).

The U.S. Department of Labor ("DOL"), however, has taken the enforcement position that the application of the motor carrier exemption requires a week-by-week analysis. *See* Ex. 30, DOL Field Assistance Bulletin No. 2010-2. In short, DOL takes the position that a driver is *not* exempt from the FLSA's overtime requirements in any workweek in which the driver—for any amount of time—drives a vehicle weighing 10,000 pounds or less, carries fewer than 9 passengers for compensation, or carries fewer than 15 passengers not for compensation. *Id.*[5]

---

[5] Despite DOL's enforcement position, some courts have held that "it would be the [DOT]'s rules—not those of the Department of Labor—that could potentially bind the court's construction of the exemption." *Fox v. Commonwealth*, 865 F. Supp. 2d at 266, n.12.

Some courts, however, have outright rejected DOL's enforcement position because "[d]ividing jurisdiction over the same drivers, with the result that their employer would be regulated under the Motor Carrier Act when they were driving the big trucks and under the Fair Labor Standards Act when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes." *Collins v. Heritage Wine Cellars, Ltd.*, 589 F. 3d 895, 901 (7th Cir. 2009).

Here, Plaintiffs and purported class members drove MCA-covered or high-capacity vehicles (9 or more passengers, including the driver) on an intermittent or regular basis. Specifically, plaintiff Raheel Farooq drove *only* MCA-covered vehicles from February 1, 2010 until he stopped working for Sunny's in April 2012. *See supra* Facts at IV.

More crucial, however, at the conditional certification stage, is that other Plaintiffs and purported class members drove high-capacity vehicles on regular or intermittent bases. *See id.* At times, drivers drove only high-capacity vehicles during a workweek. For example, Plaintiff Goitom Bisrat had numerous weeks in which he drove only high-capacity vehicles and other weeks in which he drove only high-capacity vehicles except for a single sedan trip. See *supra* IV.

The Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), emphasized that a defendant is entitled to individualized determinations of liability and damages for *each* class member. *Id.* at 2560 ("Wal-Mart is entitled to individualized determinations of each employee's eligibility for back pay."). The class mechanism does not abridge the employer's right to raise any individual defenses it may have against any plaintiff. *Id.* The *Wal-Mart* Court rejected outright the notion of "Trial by Formula" in which a sample set of the class members is selected, liability and damages for those class members is determined, and the

24

percentage of valid claims and the average damages are imputed to the class as a whole, all without any individualized proceedings. *Id.* at 2561. Moreover, "a class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims." *Id.*

Although *Wal-Mart* involved Rule 23 class discrimination claims and not an FLSA collective action, and Rule 23 and FLSA certification standards differ, *Wal-Mart*'s rule that a defendant is entitled to an accurate adjudication of each and every claim remains. "While this court recognizes that collective actions under the FLSA are not subject to the provisions generally associated with class actions under FRCP 23 . . . the Supreme Court's reasoning in. . . [*Dukes*] is nonetheless illuminating." *MacGregor v. Farmers Ins. Exch.*, 2011 U.S. Dist. LEXIS 80361, *13 (D.S.C. July 22, 2011).

In workweeks in which a driver drove only high-capacity vehicles, it is clear that he or she was not subject to the overtime requirements of the FLSA. In workweeks in which a driver drove non-high-capacity vehicles for a *de minimis* amount of time, he or she was also not subject to the overtime requirements of the FLSA. *See* 29 C.F.R. § 782.2. Even, assuming *arguendo*, that DOL's enforcement position binds this Court, Sunny's will present evidence with respect to each and every plaintiff on a week-by-week basis regarding the type of vehicles each plaintiff drove and the length of time or distance they drove them. This analysis for only the current 25 Named Plaintiffs could require a review of 3,900 workweeks (25 plaintiffs x 3 year proposed class period x 52 weeks per year).[6] There is no shortcut to this analysis, and this issue cannot be handled in a trial-by-formula manner.

---

[6]    As discussed above, some drivers drove their own sedans as affiliates of Sunny's while driving high-capacity vehicles as employees. *See supra* Facts at III. The Court will need to determine the relevance of driving a sedan in conducting an MCA exemption analysis.

### C. The Underlying Reason For Issuing Conditional Certification Is Not Present In This Action

Litigating this case as a class does not promote judicial efficiency because it would require testimony and evidence as to each individual driver. "Ultimately, the question comes down to whether facilitating notice in order to group common issues of law and fact arising from the same activity into a single proceeding will promote judicial economy." *Blaney*, 2011 U.S. Dist. LEXIS 105302 at *9.

"It is also appropriate for the Court to take case management into account at this stage because a collective action is simply a procedural device aimed at facilitating, in an efficient and cost effective way, the adjudication of numerous claims in one action. The focus here must be on the procedural advantages, or disadvantages, of conditional certification." *Saleen v. Waste Mgmt., Inc.*, 2009 U.S. Dist. LEXIS 49891, *28-29 (D. Minn. June 14, 2009). "If individualized determinations are likely to predominate, collective action will hinder, rather than promote efficient case management, and thus notice should not be granted." *MacGregor*, 2011 U.S. Dist. LEXIS 80361 at *7.

Here, with four operative, sometimes overlapping, relationships between the drivers and Sunny's, coupled with the requirement to conduct individual analyses regarding each driver's compensable time and earned compensation, class treatment would serve simply to combine dozens of mini-trials under a single caption, however the Court will need to adjudicate each claim separately. Therefore, Plaintiffs' claims are unsuited to class treatment.

### CONCLUSION

Because Plaintiffs have failed to show that they are similarly situated to the class they wish to represent, and because allowing this case to proceed as a collective action will be

inefficient and otherwise unworkable due to the individualized analysis that is necessary, Plaintiffs' motion for conditional certification should be denied.

Respectfully submitted,

**JACKSON LEWIS LLP**

May 24, 2013                               by: /s/  Jacqueline C. Tully
                                           Paul DeCamp (Virginia Bar No. 76204)
                                           Matthew F. Nieman (Virginia Bar No. 47231)
                                           Jacqueline C. Tully (Virginia Bar No. 76142)
                                           Elizabeth C. Young (Virginia Bar No. 76163)
                                           10701 Parkridge Boulevard, Suite 300
                                           Reston, VA  20191
                                           Telephone:     (703) 483-8300
                                           Facsimile:      (703) 483-8301
                                           DeCampP@jacksonlewis.com
                                           NiemanM@jacksonlewis.com
                                           TullyJ@jacksonlewis.com
                                           YoungE@jacksonlewis.com

                                           *Counsel for Sunny's Executive Sedan Service, Inc.*
                                           *and Shafqat Chaudry*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing document was filed electronically with the

Clerk of the Court using the CM / ECF system and counsel was served pursuant to that system

on May 24, 2013.


by: /s/        Jacqueline C. Tully
        Jacqueline C. Tully (Virginia Bar No. 76142)

28